Today we have four cases, and the first is number 20-3222, National General Insurance Company v. Sheldon, Mr. Twilla, and Mr. Haggerty. May it please the Court, my name is Daniel J. Twilla, and I represent the appellant, National General Insurance Company. National General should not be required Do you wish to reserve any time for rebuttal? Four minutes, please, Your Honor. National General should not be required to afford coverage for a motorcycle that it didn't know about, much less insure or accept a premium for. That's a very good policy argument, and it's one that the Supreme Court had adopted in Baker, and you see the dissent in Gallagher, but it looks like Gallagher went the other way, and footnote 6 seems to cut against you. How do I deal with footnote 6, especially the second sentence? Well, Your Honor, I think footnote 6 proposes a solution that does not work for this case, and the reason it doesn't work for this case is because National General could not have learned about the motorcycle during the application process, which is what the Supreme Court suggested that an insurer could do. And the reasoning in Gallagher was really that the parties should get the benefit of their bargain. In Gallagher, the insured asked for insurance for two cars and a motorcycle from a single insurer, Geico, and Geico provided that coverage. The insured did not waive staff coverage, but the insurer unilaterally put the cars and the motorcycles on different policies. And the question that the Pennsylvania Supreme Court was asked to answer is whether under that circumstance, where Geico issued all household policies and unilaterally decided to issue two separate policies, and where the evidence of record was that Geico was fully aware of the risks of insuring a motorcycle, the insured would not get the benefit of the bargain and what they paid Geico to provide. So how do we, why should we think that the Pennsylvania Supreme Court would go the other way? Your Honor, the Petrie case is actually currently on appeal to the Pennsylvania Supreme Court. There's been an application for permission to appeal, and I think that's an issue that is certainly in dispute in the state courts, is whether Gallagher applies or does not apply. You know, there have been a number of cases interpreting Gallagher. For example, Dunleavy, which this Third Circuit recently concluded that Gallagher did not apply to invalidate the household exclusion in that case. And the reason was going back to the Colbert decision from the Pennsylvania Supreme Court back in 2002, which said that the Motor Vehicle Financial Responsibility Law functions to protect insurers against the forced underwriting of unknown risks that the insured. But they've taken a different direction. You know, the court, there was real disagreement about this, but said, you know, these earlier, they're not holding, plurality, don't find us. Isn't the simpler reading of these cases that the court is just taking a bright-line formalistic, if you haven't signed, the record is exclusion, then everything stacks? Isn't that the simplest reading of Gallagher? I think that is the simplest reading of Gallagher, but it doesn't acknowledge or recognize the distinction between circumstances where there is a single insurer involved as opposed to circumstances where there is a different insurer. Well, we're back to footnote six, aren't we? I'm sorry, Your Honor? Footnote six that Judge Ambrose referred you to right at the get-go that indicates, hey, if you've got a, even if you've got multiple policies, in fact, I'll read it to you here. When multiple policies or insurers are involved, an insurer can require disclosure of all household vehicles and policies as part of its application process. In other words, you could fix this if you wanted to, insurance companies, you've got the means to do it, and you could require this as part of your application process. But by saying that, isn't the court saying also, we don't care whether there are multiple policies or multiple insurers, Gallagher is going to apply, unless you, the insurance companies, do something in your application process that is going to require people to come forward with information that would alter the mix, and then you can make a decision, but Gallagher applies. Well, the language in the footnote, Your Honor, is dicta. It wasn't necessary to... Yeah, it's going to apply with multiple insurers. Why would we go someplace else? Well, the Pennsylvania Supreme Court did, in the body of its decision in Gallagher, state that often in these cases, an insurer makes the argument, which we're making to the court here today, calls that an obvious argument, where the insurer is unaware of the potentiality of stacking on another vehicle that has not been disclosed to it. And then the court distinguishes the Gallagher case by saying, GEICO was aware of the reality of the other vehicle, and could have collected premiums. And while there is a footnote that makes certain suggestions about what an insurer may do, quite frankly, that solution does not apply in a situation where the insurer purchases a vehicle after they have already obtained the policy covering the automobiles. I'm not suggesting to you that what the Supreme Court was indicating was the best policy solution. I'm just asking you whether you've got some law or authority that would point us away from where the Supreme Court of Pennsylvania seems to have gone, and which the dissent in the case believes it has gone. I mean, the dissent, Justice Weck's dissent, is your position. And it lost. So why would we look at Gallagher and say, yeah, that's the dissent, but we're going with that? Well, it is the dissent, and it was explaining why the majority decision was incorrectly decided. And the Pennsylvania Supreme Court addresses that. The majority addresses that by saying, it's not incorrectly decided, we are addressing a narrow circumstance, and we're going to take this case by case. And I do think that this is a very different case because of the fact that there are multiple insurers involved, because of the fact that National General was not aware of the motorcycle, could not have been aware of the motorcycle when it underwrote this policy. Motorcycles carry far different risks than automobiles. Question. Could you not have, though, have in your application process included a waiver using the exact language that the statute requires? Can insurance companies protect themselves by saying, look, given Gallagher, you know, we don't know what people are going to do. So you just sign this right now and tell us that for any after-acquired vehicle, you are knowingly waiving any stacking privileges. And use the statutory language. Isn't that available to you? In this case, Your Honor, the insured had stacked coverage, and so I don't think National General would have proposed a stacking privilege. language that the statute requires and limits itself to after-acquired vehicles so that there can be no question that they understand, they've been told with the statutory language, and you've protected yourself against after-acquired risk. Isn't that what Footnote 6 is encouraging and telling you to do? As I understand Footnote 6, it is encouraging insurers to obtain all of the information they can about vehicles in the underwriting process. I'm not sure whether the waiver form that Your Honor has suggested would be something that would be consistent with the Motor Vehicle Financial Responsibility Law. I think that's something I would have to further consider. Insurance policies do contain provisions which require an insured to report changes to the policy. And in fact, National General's policy has a provision which requires the insured to report certain changes to their condition. And there are suggestions as to what those things might include. A new vehicle or a vehicle that's purchased subsequently is not specifically identified as one of the things that an insured must report. But I would certainly think that if there's an expectation of coverage by the insured, the insured would want to make the insurer aware of the risk. The household exclusion is intended to protect insurers from underwriting risk that they're not aware of. Can I just ask one perhaps unrelated question pertaining to the policy itself? The underinsured motorist provision in the National General policy covers bodily injury caused by an, quote, auto accident. And auto is defined in the policy as a vehicle having more than three load-bearing wheels. Why would that policy cover Sheldon's injury on a motorcycle? Or is it the fact that it was caused by an auto accident, another, an auto? Is that it? I believe it was because it was caused by an auto. Okay. That's what I thought. All right. Thank you. We'll get you back on the phone. Mr. Haggerty. Good afternoon, Your Honors. James Haggerty for Mark Sheldon. As Your Honors have pointed out, at issue in this case is the applicability of the Gallagher decision of the Supreme Court. In their position, National General misses the point. If they had even known of the motorcycle, they would not have changed their premium structure. Why? Because they have a household exclusion. They have a household exclusion in their policy. And the household exclusion in their policy says we do not provide coverage for another vehicle not insured here. So even if they had, even if Mr. Sheldon had told them, I just purchased a motorcycle, they would have said, I don't care because I have a household exclusion in my policy. I doubt they would have said, I don't care. I think they would have said a motorcycle is a whole different thing. And how is it sensible for an insurer to be put on the hook for risks that an insured has never disclosed and which the insurer has no good way of knowing about? Doesn't that undermine the very notion of an insurance market to allow something like this to happen? For people to go out and take on significant additional risk and not let the insurer know about? Your Honor, the National General accepted a premium for stacking. And stacking includes other household vehicles. So they accepted a premium for inter-policy stacking. Well, you just actually inserted your answer into that. I mean, you've assumed the premise, which is that the way this is written, they accepted the notion that any vehicle that came in was going to be part of their policy. Their argument is, and it's a pretty darn good argument, is we made a bargain for a specific set of risks. And we didn't make a bargain for some additional risk that we had no way of knowing about and which is a significant risk and which undermines the bargain completely. Now, in what other setting do you have an arrangement where, after the fact, one of the parties can change the terms of the agreement in a dramatic way by doing something, as in this case, increasing very significantly the risk to be borne by the other party? Your Honor, that's a situation in every case where a court determines that an exclusion is void and unenforceable. Premiums are based upon historic payout. If you have an exclusion in your policy, you are not underwriting the risk in that exclusion. But it's going to change things going forward. If we decide this going forward, again, we're going to wind up, you know, presumably raising rates. But more generally, we shouldn't be in the business of predicting what these rates are going to be. It just, it stands to reason that you're imposing some unforeseen expenses on the insurer. The insurer underwrote this thinking there'd be no others. There's an obligation on your client to notify the insurer. And yet, evidently, it didn't come to the insurer's attention in time. And so it does seem like you're depriving the insurer of the benefit of the bargain. I respectfully disagree, Your Honor. The insurance company issued this policy. And when they issued the policy, they excluded certain risks. This situation, the situation posed by Judge Jordan, is the exact same situation in Gallagher. The exact same argument would exist on behalf of the carrier because Gallagher, in Gallagher, Geico could say, well, wait a minute, I didn't underwrite this risk, and now I have to pay. And the court said, yes, you do have to pay because the exclusion which you put in is invalid. All they have to do is search their own databases, and they can find out through these other vehicles. Here, he gets the motorcycle after he's applied for the policy. If he does not notify them, they don't find out until suddenly there's an accident and there's a claim. It doesn't affect the premiums, Your Honor, because they have an exclusion. But now you're asking us to hold the exclusion as unenforceable. And going forward, that's going to affect the premiums. And that happens in every case where a court determines that an exclusion is invalid. All of a sudden, the carrier can come forward. The carrier puts this exclusion in the policy and says, I am not going to provide coverage for this, so now I am not going to charge a premium for it. And the court comes along and says, that exclusion is void and unenforceable. And the carrier says, well, wait a minute, that's unfair. Now you're making me pay for a risk that I excluded, even though my risk that I put it in there. I created my own problem, and now I'm complaining about it. It's a reason for us to hesitate before excluding things from what the default is that people are bound by the words of their bargain. And why is it, if this exclusion was fairly clear, and we have two different insurers, we should extend Gallagher to this situation? You know, the court's gone back and forth, and there are a bunch of earlier Pennsylvania Supreme Court cases that have recognized the force in this argument. I don't think it's – they are not extending Gallagher. We have to keep in mind that this is a contract case. A claim for unreturned motorist benefits is a contract case. If Gallagher hadn't happened, let's say Gallagher never was issued, would you win under Baker? No, certainly not, Your Honor. Certainly not. Gallagher was a sea change in the law. And it's a sea change in the law for, by its terms, an insurer whose risks are increased within its own policy. That is, as Judge Beebes was pointing out, an insurer who had at least some opportunity, at least theoretically, to check and see about the risk. Here, there was literally no way for them to know, unless your client came forward and said something, which he didn't. But it didn't matter. It doesn't matter, Judge, because they excluded it. Your Honor, why isn't that a distinction with the difference? Why isn't that a real, actual difference that might have made a difference to the – and might indeed still make a difference to the Pennsylvanians? Well, it would only make a difference if we're talking about getting the benefit of the bargain. And the benefit of the bargain is I paid for stacking under my auto policy. I'm entitled to stacking under my auto policy. Wait, wait, wait, wait. You can't have it both ways, can you, Mr. Hagedy? On the one hand, you say it's a contract case. You get the benefit of the bargain. But it sounds like you're arguing that the only person who gets the benefit of the bargain is your client. They made a bargain, too. And the bargain was you get stacking, but there's this exclusion. And that's part of their bargain with your client. And now you're saying, yeah, yeah, but don't worry about that. What I'm saying, Your Honor, is, yes, you put that in your policy, but you did it at your own risk because it was a hidden stacking waiver. And now you're complaining that you're going to have to pay more because you had an invalid exclusion. It's like a young man kills his parents and he complains he's an orphan. They created the problem. How did they create a problem by saying we have an exclusion? And now it turns out you're correct. It turns out that the exclusion in Gallagher is said to be no good under the facts of Gallagher because of a policy reason that's highly debatable. But it's a policy reason the Pennsylvania Supreme Court chose. How is it creating a problem like like shooting your parents for an insurance company to say we're going to exclude this risk? That's because anytime you're making a bargain, I guess you're at risk of some court saying we don't accept it. But is there a moral wrong there? No, it was in direct violation of the requirements of the financial responsibility law. The factual predicate of Gallagher is that Mr. Gallagher paid for stacking under his auto policy. And that stacking includes intrapolicy stacking up and down and then inter in the household. And he paid for that. And the financial responsibility law says and the Pennsylvania legislators said this stacking right is so important that if you want to get rid of it, you have to sign this waiver and date it. And what the what the carriers did was they said, well, we're going to put in a waiver of interpolicy stacking without having you sign anything and without telling you. So you're paying a premium for this. And the court said that's an invalid and illegal exclusion of stacking. Now, that's a that's the that's the position that won in the Supreme Court. But you're you make it sound as if they yeah, they sat around saying, let's do something illegal. This was a debatable point. And you said that you acknowledge this a minute ago. Gallagher is a sea change in the laws that you couldn't have won before. And you couldn't have won under Baker because the policy reasons were running in the other direction. So why should Gallagher be extended? Why should Gallagher? Why should we say extend Gallagher and not just say, look, until the Pennsylvania Supreme Court says one way or another, Gallagher's limited. But your honor, I'm saying it's not an extension because the only thing relevant in Gallagher is the auto policy. The motorcycle policy is irrelevant because it is a contract case. If you indulge me in an example, let's say in my household, I have Comcast cable and I have direct TV and under Comcast, I have HBO and under direct TV. I don't have HBO. And so I go into Comcast and say, well, I want to watch HBO. They say we can't watch HBO because you waved it over here. You don't have it over here. I'm entitled to it. I paid for it. Mr. Gallagher paid for stacking. He's entitled to it. And that's the only thing that's relevant is that contract. The argument in Baker was we're not talking about stacking. We're talking about the scope of coverage. Well, and that was the that was that was the very issue because Baker and all those cases never discussed the stacking issue. It was never addressed. It was only for the first time the court finally got around to it and said, you know, you're right. Well, well, let's stick with your with your example and your example. The bargain that struck, which includes an HBO subscription, is something everybody knows about. It's paid for. It's bargained for. It's received. In the example in front of us, there isn't a bargain for exchange with respect to the risk of the insurance. Unless one assumes, which we're not able to assume if we're going to have an argument about that's logical here. If you if you assume in advance that that people can freely bargain for exclusions and that when they bargain for these exclusions, before they're declared unlawful, that there are reasoned exchange. It isn't like buying something that everybody's agreed upon and then having it taken away. It's like it's quite, quite different. It's as if your Comcast subscriber went and said, I want HBO now. Well, you didn't pay for it. No, I want it. Give it to me. No, Your Honor, because for it, he paid for stacking. He paid for he paid for a risk that had an exclusion. And you're saying, yeah, yeah, but that exclusion is illegal. But but how are they to know it was illegal until and that it was going to be illegal in the way you're describing? You're assuming the conclusion you want us to make, which is that Gallagher applies to this set of facts. Well, you're saying that this interpolicy thing that's covered by Gallagher. But that's the argument you have to make, not the argument that you get to assume. That's the wall, though, that it's that he paid for stacking under his policy. He's entitled to stacking if if they can say now, well, wait a minute. But the policy argument is, yes, he did pay for stacking. Yes. And in fact, he's getting stacking. But only for those vehicles that the insurance company knows about. That's that's the policy argument. And if if they don't know about it, then how in the world are they? Should they be in some way able to intuit that they would cover this type of motor vehicle or auto accident? Well, they can only do it going forward because premiums are based upon historical payout. And if you have an illegal exclusion, you're not making those payouts. So now they're coming forward and saying, well, we had an illegal exclusion. So you shouldn't make us now cover these things because we never accepted a premium. Well, you didn't accept the premium because you had an illegal exclusion in your policy. Under that rationale, I'm going to be an insurance company. I'm going to put an exclusion. It says we provide no coverage for any accidents involving trucks. And my guess is post Gallagher, that insurance policies have been adapted to clarify that issue. So, correct. No, you're not. They haven't. They've stayed the same. Well, they're the carriers are fighting it and saying Gallagher only applies in a situation where you have the same carrier issuing both policies, et cetera, et cetera. Rather than looking at it and saying the factual predicate of Gallagher is I paid for stacking and the household exclusion is an illegal stacking waiver, an illegal stacking prohibition. So, therefore, it's invalid. That's the holding in Gallagher. Because back in the days when I represented insurance companies, you would have gone two paths. You would have changed your policies, new policies going forward, and you still would have fought in the courts the decision that you have a problem with, in this case, being Gallagher. Well, I think some carriers are probably, well, they haven't revised their policies yet. That's, as you know, is a lengthy process. I assume that they will be taking out household exclusions from their policies and or adopting the risk according to the way Judge Jordan suggested. But it still remains that this is a situation where if we're talking about benefit of the bargain, benefit of the bargain is Mr. Sheldon. He paid for stacking and he's being deprived the benefit of the bargain that he paid for. If they priced it wrong, well, that's on them. Because the same argument that can be made, that is being made here, is the exact same argument that could be made in Gallagher. Geico could come forward and say, well, wait a minute, you're making me pay now. You're making me pay Mr. Gallagher, underinsured motorist benefits, for a risk I excluded. And the court said, yes, you excluded it illegally. So since you excluded it illegally, you have to pay for it. It's on you if you included an illegal exclusion and you didn't pay for it and you didn't charge for it. That's on you. That's not on Mr. Gallagher. If you didn't set your premiums properly, that's on you. You created the problem, Mr. Carrier. You know, I write a policy and say I'm going to exclude anything involving a truck. It's illegal. But isn't the concept that with Geico in Gallagher, if you have policy A and policy B, Geico knows what's in both policies. Here you have two different insurers. And how is one insurer supposed to know about a policy with another insurer? Actually, in Geico, there are two different Geico companies. So whether or not they knew is something we don't know. But, again, it wouldn't have mattered the same way Geico, even if it's the same company, the same situation here, since they had the household exclusion, it wouldn't have mattered to them what other vehicles were in the household because they're excluded. Since they are excluded, I don't have to worry about them because it doesn't affect what risks I'm paying out. But if the court comes forward and says that exclusion is invalid, then you have to pay that. And if you didn't properly price it, that's on you. For those reasons, we respectfully request that the decision of the district court be affirmed. Thank you very much. Thank you, Your Honors. Mr. Twilley? Your Honors, I'm happy to address any additional questions. I'm not sure I have any. Anybody else have any questions? No. No. Thank you very much. Thank you. We'll take the matter under advisement and appreciate your being with us here today.